We have the first case on calendar, Solnin v. Secretary of Labor and the Secretary of Labor against Sun Life. Is the Department of Labor here? Oh good, then you'll share the time. Good morning. Good morning, may it please the court. Joshua Bachrach, I represent the defendant's appellants. I'm going to refer to them collectively as Sun Life. The district court in this case committed two significant errors that require reversal of that decision. First, the court reviewed the claim decision, or the claim de novo, even though there's a grant of discretion here. And the second, even if it could be reviewed de novo, the evidence here is so overwhelmingly contrary to the claim as to make that decision clearly erroneous. On the first issue, the court remanded the claim. There was an earlier lawsuit and the court remanded the claim for further review by Sun Life. That remand order said nothing about time parameters for a decision. It just said that Sun Life will consider any new evidence by the claimant and then render a decision. Is it your position that under those circumstances it could have taken a couple of years to do it? No. All the claimant had to do was cooperate and it would have been done in a matter of a month, maybe even less. But what happened here is the claimant took nine months to provide a release and then wouldn't provide another release that was needed. She wouldn't submit to an IME and we kept asking and kept trying. Your position is that procedurally at that point Sun Life was under no time constraints? It was not under a time constraint. However, I might add, what the court could have done or what the claimant could have done if they thought that we were acting improperly was to write to the judge and to say to the judge, they're taking too long, there was nothing in your order, please set forth a time frame for this to be completed. We would have responded by saying, Your Honor, unfortunately this is taking too long because she has not cooperated at all. And in fact we filed a motion to dismiss in which we argued that. My understanding is that the company took more than 60 days to do anything and that it was only considerably after that that the claimant filed and reminded the company that it had to act. Not exactly because the court order said we were to consider new evidence by the claimant, any new evidence she submits. So we were waiting for her to submit evidence and she didn't write to us for about two months. As soon as they got that, very promptly they sent out an authorization request so they could get updated evidence, medical records. And she refused. She first submitted an altered authorization which wouldn't even let us give it to another doctor. I mean, it certainly appears that the company was mousetrapped. It was. But once we are required to give deference, not great deference, but our deference to the position of the Department of Labor, all of this goes by the board, doesn't it? Well, I don't think the Department of Labor is entitled to any deference in this case. And I'll tell you why. First, we have the fact that you have to look at the language in the regulation itself. And that said that a claimant may appeal a denial of benefits. The regulation only applies to an initial claim and an appeal. Well, there was an appeal already. And that happened years earlier. She exhausted her administrative reviews, then filed the first lawsuit. There's a limitation on how long you have to act after a remand. There is none. The court could have. That's your position, right? There is none. But I'm telling you, we were not trying to be unreasonable. We were trying to do everything we could that's reasonable. As Your Honor said, we were mousetrapped. So what the court should have done, even in giving every deference, every benefit of the doubt to the claimant, what the court should have done when we filed our motion to dismiss after the second lawsuit was filed, is said, let's take a step back. Claimant, you cooperate. And then once that has all happened, you wouldn't attend an exam. You're going to do that. You wouldn't provide an authorization for nine months. You finally did okay. Let them get the records. You get all that information. Sunlight, complete your review in 60 days. And then make a decision after we get all that new information. This is an equitable statute, ERISA. It is equitable. And the unclean hands doctrine applies as a result. But it is your position, is it not, that the 60-day deadline of this regulation does not apply to remanded claims? That's true. And it was also the decision of this court.  No. It's the decision of this court. In a case, we provided supplemental authority last week, Quigley v. Citigroup. And the site to that is 520 Federal Appendix 15. Obviously, it's unpublished. But what happened in that case was there was a lawsuit. It's more than unpublished. It's not precedent. Exactly. It isn't. But it gives an understanding. They don't have a case that is precedent. No, and neither do they. They don't. This regulation has been around for years and years. Let's go back to equity, then. Sure. You think that the 60-day deadline doesn't apply to remanded claims? It does not under the plain language. And we have to adopt that view to give you the remedy you seek, right? Not necessarily, Your Honor. I do think that's correct. But what the district court could have done and did not do was to say this is an equitable statute based on equity. And even in the HALO case, in which the regulation clearly applied, they said that there are some situations where there could be exceptions to the strict deadlines. And this is such an equitable situation. Let me come at this in another direction. Sure.  And your client cited ERISA to impose a 105-day deadline in your July 27, 2007, discovery letter. Is that right? They were trying to get something going. And, by the way, they didn't agree to it. Well, they didn't agree to it. So there was no time frame. We were trying to do what the district court didn't do, and that is get a time frame, a set time frame. And so we proposed something, and they refused to accept it. On January 8, 2008, she expressly asked for a ruling based on the evidence in the record. Is that right? That is correct. Why couldn't you have issued a decision then? Because it wasn't until April, Your Honor, that she provided the signed authorization to let us get records. And this is important, Your Honor, because Yeah, yeah, that may be, but you could have made a decision based in part, since you're heavily into equity, based in part on her lack of cooperation, asserted lack of cooperation. And maybe they should have. Instead, you've stalled this for another eight years. I would say she stalled it, but I would say also that if you look at the evidence, one of the Who has an interest in stalling, speaking of equity? She had an interest in cutting off our review. She had an interest in preventing us from finding doctors like Dr. Mund. Her claim is based. I'm going to get into the claim a little bit, Your Honor. Her claim is based on the fact she says that she has a herniated disc, which causes her legs to collapse. She needs a wheelchair at times or a cane. And yet a doctor she did not identify, even when ordered by the court to identify her doctors. Your cinematographer has some other views. No, no. He's got some great video, and that's on page 40 of our Well, yeah, exactly. He definitely disagrees. As part of the equitable defense doctrine. And now the cinematographer. Exactly. But she's claiming, I can't use my lower extremities. I need a cane. I need a wheelchair. Forget about the surveillance for a minute. She told Dr. Mund, a rheumatologist, that she had no lower extremity complaints and no complaints related to a herniated disc. That's page 1399 of the record. The court's failure to consider that and the five other doctors that she treated with who disagree. Who said, I can't find anything to corroborate her complaints with what she's complaining of. That renders, under any standard of review, that decision clearly erroneous. What's at stake here? Are we looking at 16 years of benefits? It was until she turned 65 or 66. So I think there may even be another few years left on that. But, yeah, there are probably, I think, two more years left on that. So I would think nothing stops you from conducting another review. But then she would get benefits up until today. And that is inequitable based on her failure to cooperate. Your view of equity is that you could continue through the judicial system, which is obviously your strength and not hers. Almost by definition. Instead of actually using the administrative process, which is entirely under your control, to make a decision of some kind. But it's not. And, Your Honor, I do want to be weary of the time here and reserve a little. But I would say this. She was the one that manipulated the system here. She is the one who continually failed to cooperate. Even to the point we said, look, there's another doctor who wants or a pharmacy that needs a specific authorization. I gave you a general one. I'm not going to give it to you. She's the one that manipulated this throughout. Could they have denied the claim based on her failure to cooperate in January? Maybe they should have. But she's the one who filed suit. Failure to cooperate is a perfectly good defense. And I can't see if it, given the facts that you're recounting in your brief, I can't see how you would have lost on it. So then the district court, when we filed our motion to dismiss based on her failure to exhaust, included that later as an affirmative defense, the district court should have ruled in our favor. What do you mean you included it later as an affirmative defense? In the answer. After we filed our motion to dismiss, we filed a motion to dismiss based on failure to cooperate and said at the very least, Your Honor, remand it back to us with instructions for her to cooperate, give us a deadline, we'll get this thing done, and the judge refused. Was this the first time around? The second. This is the second after her failure to cooperate we said that. And the district court didn't care. We could do no right and she could do no wrong. But you didn't deny her claim on the ground that she failed to cooperate. Actually, there was, if I'm not mistaken, there was a after the fact, after the complaint was filed. I know, Your Honor, I understand. But equity has to come into here. I understand. But, you know, when you're dealing with disability insurance and there's a delay of 10 years in people getting benefits, there are equitable problems with that as well. Wouldn't you agree? Well, there would not have been this lengthy delay if she had cooperated. It would have been a claim decision. If they had found for her, she would have gotten benefits. If they didn't, the judge would have decided. And, by the way, we're not responsible. Unfortunately, there was a lengthy delay here by the district court in deciding some of these issues. We're not to be faulted for that. And, you know, I'm not trying to fault the judge either. I do think his ultimate decision was wrong, however. You're not claiming that you were prejudiced by the delay? By, I'm sorry? You're not contending, are you, that you were prejudiced by the delay? That we were prejudiced? I'd say we were prejudiced by her behavior, but not necessarily by the delay. By her behavior, failing to identify all of her trained doctors. But not by the delay per se? Well, yeah, actually, I would say that. My client has incurred a lot of fees because of this case. But you also haven't paid the benefits for a decade. You know, I'd hate to say it. It wasn't a large benefit amount, from what I can recall. Any amount significant. Maybe it was to her. Oh, of course it could be. And, by the way, that's one of the other problems here is she was actually working. She admitted on a loan application that she was working. But there's a finding that she was not. The judge, that was a clearly erroneous finding. We have a Dun & Bradstreet report that listed her as working as the representative of that company. We had her on the company voicemail. We got a loan application. She offered an explanation for that. She offered an explanation. Most judges wouldn't find it very convincing. But a judge has found it convincing and has made the finding. I would say it's a clearly erroneous finding. When her argument was, this is interesting, her argument was that I filled out the loan application, but they put false information and forged my signature. And, therefore, I filed a complaint against them. So we called her bluff and we obtained a copy of that lawsuit. The only claim that was made was that they did not disclose all of the costs of the loan. So she lied to a judge in her pleadings, saying, and I'm not blaming counsel here, this is what he was told, until we found out the truth. She claimed that she was, they committed fraud on her, we get the actual complaint, and there's nothing like that in there. That makes it clearly erroneous. We'll hear you on rebuttal.  Thank you, Your Honor. Good morning. Good morning. My name is Scott Reamer. I'm here for Janet Zolnan. Let me just first address the issue of whether they should have issued a denial for lack of cooperation. And, actually, that is an argument that they're bringing only in the litigation. In April of 2008, their very last communication to the claimant was that they were going to review the medical records by a reviewing doctor and then schedule a IME after that. Those are not the words of a company who thought that Mrs. Zolnan was not cooperating. If at that point they decided that she wasn't cooperating, they could very well How long was that after the remand? That happened, the remand was in 2007. That was actually three months after January 2008 when the plaintiff submitted her evidence and asked Sun Life to make a determination. So that was already, and that's actually That's not what I asked. When did the company issue the statement that you just referred to a moment ago? On April 2, 2008. So that would have been six months after the remand. Right, and that's on the joint appendix, page 54. And I'm saying at that point, if they really believed she was not cooperating, they wouldn't be asking for an IME. They're still asking for an IME, so in their own mind, they weren't convinced that she was not going to appear at an IME in the future. But even at that late date, they did nothing to actually schedule an IME or to do the precursor of the IME, having a reviewing doctor look at the records. Also, they're confusing the scope of the remand. When you take a look at the remand order, Judge Hurley only wanted a limited remand. He ordered them to do a vocational evaluation and then granted the plaintiff the opportunity to submit additional records. There was nothing in that remand order that gave them the right to do an IME, to gather records, to do whatever they did. They only had the right to do a vocational review and to review the records that Mrs. Solon presented. And all of that, the vocational review conducted by Mrs. Solon's expert, was submitted by January 8, 2008, and so was all her medical records. Why did she alter the terms of her medical release on January 8, 2008? She thought that the release was overbroad. But by April 2008, still more than 60 days before it was reviewed, they sent an unaltered medical authorization. So by April 2008, they had everything they needed to do their review, and they did nothing. When you take a look at the claim file, there's no action at all. I understood what you said. So between January and April 2008, Mrs. Solon sent an unqualified medical release? That is correct, and they acknowledged that. Thank you. We'll hear from the Department of Labor. You are on again and off again. You have your funding? Congress came through at the last moment, so here I am. Welcome. Thank you. Good morning, Your Honors. My name is Megan Hansen from the U.S. Department of Labor, as amicus curiae in support of Plaintiff Appellate. This is a case about a plan fiduciary who failed to provide an answer to participants' request for benefits for over nine years since the court remanded the claim to the plan. The Secretary's position is that a remanded claim should be treated by the plan as an appeal and subject to the timing rules and other requirements of the Secretary's claims. We're clear that the insurer here, the Sun Company, was free to reject the claim on the basis of non-cooperation? Certainly, Your Honor. If that is what Sun Life determined as a fiduciary with adherence to its duties of prudence and loyalty to the claimants, then that would have been appropriate, yes. But that is not what happened here. Here there was no answer at all. Well, suppose the judge had said, all right, it's been 180 days, but that's okay. Certainly, Your Honor, but here Congress gave an express grant of authority. You're saying that the judge can't do it? Excuse me, the judge can't do what? Forgive a delay of more than 60 days. That is correct, Your Honor. It is the department that is responsible with determining? Can the judge say, here's a remand, you have to get back within three months? Respectfully, Your Honor, that's not the case before the court here. I'm asking hypothetical. Hypothetical is the one that's not before the court. Respectfully, Your Honor, that question was not briefed, and the Secretary doesn't take a position on that. The Secretary's position is that when there is no information in the remand order as to the timing rules, the timing rules within the claims regulation should apply and should require the claims administrator to provide it. But it is the judge's remand order, is it not? It is, Your Honor, and again— It would be passing strange if the judge lacked the power to frame the terms of the remand order. Respectfully, Your Honor, the Secretary takes no position on that position, but instead on the— But why are you here, then? If the questions that would be helpful to us that you're ducking on this Secretary takes no position, why bother to come? The department is not aware, nor is the defendant cited, to any claim, any case where the court has provided a longer period of time than— These are hypothetical questions. I understand, Your Honor. Excuse me. Just let me finish before you interrupt me. These are hypothetical questions. What we're trying to do is just test the boundaries of your position. It happens here every day. I understand, Your Honor. Unfortunately, the Secretary has not taken a position as to that situation, and I cannot answer that question. So could you tell us what the position is, properly limited? Certainly, Your Honor, that when a court fails to speak as to the timing requirements of a claim on remand, the timing requirements and other rules of the claims regulation should apply, and that those should require the claims administrator to provide an answer within, now under the current rules, no more than 105 days. Under the old regulations, no more than 60 days, unless another extension was required. It's important that the language of the regulation— Who rules on an extension? Excuse me? Who rules on an extension? The claims administrator has that authority to determine if there's information that is— or situation outside his control that requires an extension. But the language of the regulation applies to a claim, and the procedural posture of a claim, including remand of a court, does not have transformative power to change that claim into something new. The Secretary's interpretation also appropriately balances the equities, something that we have heard a lot about here. It ensures that the claimants receive a timely response to claims, but it also takes into account the claims administrator. A claims administrator that actually issues a decision upon remand and exercises its discretion, unlike what happened here, is provided significant deference in the court. It is only when the claims administrator fails to provide any decision that de novo review by the court is appropriate. As this court had recognized in HALO, the Congress entrusted the Department of Labor and not the courts to issue a claims procedure regulation that appropriately addresses ERISA's competing claims, as the Secretary has done here. And for the reasons we've discussed, we request the court affirm the district court's ruling. Thank you. We'll hear rebuttal. I'm kind of shocked here. The Department of Labor, in its brief, stated that a court can first give a period of time in a remand order and then provide 60 days for review or whatever. Then the regulation would apply. And now we're hearing them take the exact opposite position. So I'm kind of surprised by that. They did take a position that the court is not bound by the language in the regulation. And to me, that was— As counsel for the government said, when a court fails to speak to timing, when a court fails to speak to timing, then the 60 days or the 105 days applies. Well, either a regulation applies or it doesn't. And here it doesn't. I mean, the regulation could say if a court—it could add language regarding a remand to the regulation. And it doesn't. I know counsel put in her brief that the government said that there's new language in the amended regulation, which will be coming out shortly, which deals with remands. But that's not true. It deals with a remand if a claimant hasn't exhausted her administrative reviews. She did so already years earlier. Now, opposing counsel and the Department of Labor bring to our attention the fact that in April of 2008, Solomon's counsel sent an unaltered and executed medical release to Sun Life. Is that right? She did. And she also said, I am not submitting to an IME in the same breath. And we were still hopeful. You were hopeful of what? Because you care. Well, we were trying to do what the statute—and by the way, that's what matters, is the statute, a full and fair review, because it's equitable. We were trying to do a full and fair review. And you think that after April 2, 2008, you were unable to provide a full review and a decision on this matter? That's correct, because she would not submit to an IME. Which, by the way, even the district court, after the case came back, the district court agreed that we were entitled to it and ordered her to submit to an IME. And just like her own doctors, except for the one, it found that there was no support for her claimed impairments, just like the surveillance. And I see that I'm out of time. I would just like to just quickly sum up that the decision of the district court, even under de novo review, is clearly erroneous based on the loan information misstatements, based on the surveillance, based on her own doctors. So what we're asking the court to do—enough has been enough. We're asking the court to reverse the judgment, enter judgment for son life. Thank you, Your Honors. Thank you all. We'll reserve decision.